**ACACIA VILLA, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 90–9C.**

United States Claims Court.

Nov. 7, 1991.

Henry A. Hubschman and John F. Coverdale, Washington, D.C., for plaintiffs.

John E. Kosloske, with whom were Asst. Atty. Gen., Stuart M. Gerson and David M. Cohen, Director, Washington, D.C., for defendant. John Herold, Howard M. Schmeltzer and Georjan Overman, Dept. of Housing and Urban Development, of counsel.

OPINION

ANDEWELT, Judge.

I.

In this contract action, plaintiffs, Acacia Villa and 58 other developers of rental

housing projects, seek back rent payments for housing units rented to low-income families pursuant to Section 8 of the United States Housing Act of 1937, as amended, 42 U.S.C. § 1437f. This action involves the calculation of periodic rent increases due project owners under Housing Assistance Payments (HAP) contracts entered either directly with the United States Department of Housing and Urban Development (HUD) or with local authorities who in turn have contracts with HUD. In a June 6, 1988, decision, the Court of Appeals for the Ninth Circuit interpreted the HAP contracts to require that periodic rent adjustments be based on the most recent Automatic Annual Adjustment Factors (AAAFs) published by HUD. *Rainier View Assocs. v. United States*, 848 F.2d 988 (9th Cir. 1988), *cert. denied*, 490 U.S. 1066, 109 S.Ct. 2065, 104 L.Ed.2d 630 (1989). In a March 1, 1991, opinion in *National Leased Housing Ass'n v. United States*, 22 Cl.Ct. 649 (1991) (*NLHA*), this court disagreed with the Ninth Circuit's analysis and concluded that the HAP contracts authorized HUD to conduct comparability studies to determine the rents charged for "comparable unassisted units" and then to set periodic rent adjustments based on such studies, rather than on the most recently published AAAFs.

The instant action is currently before the court on plaintiffs' motion invoking the doctrine of issue preclusion. The claim rests on a district court decision in *Acacia Villa v. Kemp*, 774 F.Supp. 1240, (C.D.Cal.1990), which was issued after the Ninth Circuit's decision in *Rainier View* but before this court's decision in *NLHA*. Plaintiffs filed their district court action shortly after filing the instant action.[1] Plaintiffs based their district court complaint on the same facts and theory of liability as the instant complaint, but plaintiffs sought declaratory and injunctive relief rather than monetary damages.[2] In its October 31, 1990, deci-

sion, the district court concluded that "HUD's failure to calculate the rent adjustments according to the AAAF formula is a breach of [the HAP] contracts." *Id.* at 1251. The court explained: "This Court is bound by the Ninth Circuit's construction of the HAP contracts in *Rainier View*." *Id.* The decision also addressed an issue not addressed in *Rainier View*—the constitutionality of Section 801 of the HUD Reform Act of 1989, 103 Stat. 2058 (Dec. 15, 1989).[3] The district court concluded that Section 801 was unconstitutional to the extent that it limited HUD's rent liability to an amount less than plaintiffs otherwise would have received based on the applicable AAAFs under the HAP contracts. *See NLHA*, 22 Cl.Ct. at 652–56.

Plaintiffs argue that since they already litigated and prevailed against defendant on the issues of breach of contract and unconstitutionality of Section 801, defendant should be precluded from relitigating those issues in the instant action. In response, defendant contends that because the district court's decision is now on appeal to the Ninth Circuit, this court should stay any consideration of the preclusive effect of the district court's ruling until the appellate process is completed. In the alternative, defendant contends that the requirements for issue preclusion are not satisfied and that this court should not grant preclusive effect to the district court's treatment of either the breach of contract issue or the Section 801 issue.

## II.

■ Defendant contends that a stay is appropriate here because plaintiffs' district court action may well be reversed on appeal. Defendant does not dispute that *Rainier View* is binding precedent on the district court, but contends that there is more than a distinct possibility that the Ninth Circuit will reconsider *Rainier View*

---

1. Plaintiffs filed the instant action on January 2, 1990, and the district court action on January 25, 1990.

2. The district court refused to stay its action pending resolution of the previously filed Claims Court action.

3. Section 801, which this court discussed in *NLHA*, 22 Cl.Ct. at 652–56, was enacted subsequent to, and partially in response to, the Ninth Circuit's decision in *Rainier View*.

when it reviews *Acacia Villa v. Kemp*. In addition, defendant argues that the Ninth Circuit has never addressed the constitutionality of Section 801 and, upon review, may conclude that the district court erred in holding it unconstitutional. Defendant argues that awaiting final resolution of the appellate process before addressing issue preclusion here could avoid unnecessary work in that the court would not have to address issue preclusion if the Ninth Circuit reverses the district court decision on both issues.

This court will not issue a stay at this time. First, as to burden, the parties have fully briefed the applicability of issue preclusion and the court can resolve the question with the expenditure of comparatively little resources. Second, and more fundamentally, it would be inefficient for this court to stay this proceeding before even considering the threshold issue of whether the doctrine of issue preclusion potentially applies.

This court ultimately can resolve the question of issue preclusion in either of two ways—either the prerequisites for issue preclusion are present or they are not. If the court concludes that the prerequisites are present, the appellate process in the Ninth Circuit clearly would be highly relevant. Indeed, the court would not grant a money judgment in this action, based in part on issue preclusion, until the appellate process for review of the district court decision was complete. On the other hand, if the court concludes that the prerequisites for issue preclusion are not present, then the Ninth Circuit appellate process would be totally irrelevant. It is this latter possibility that convinces the court not to grant a stay before addressing the potential applicability of issue preclusion. In such a case, a stay would prevent the parties from moving this case forward, possibly for a period of years, while waiting for a court decision that is irrelevant. It would appear far more efficient for this court to address issue preclusion first, and if the court determines that issue preclusion does not apply, the parties can turn their efforts immediately to addressing the many issues that would remain.

## III.

■ "Under the doctrine of issue preclusion, traditionally called 'collateral estoppel,' issues which are actually and necessarily determined by a court of competent jurisdiction are normally conclusive in a subsequent suit involving the parties to the prior litigation." *International Order of Job's Daughters v. Lindeburg & Co.*, 727 F.2d 1087, 1090 (Fed.Cir.1984), *citing Mother's Restaurant, Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1569 (Fed.Cir.1983). The doctrine derives from the general principle that "the same person may demand a judicial determination of the same issue only once." 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.443[1] (hereinafter *Moore's Federal Practice*). The doctrine of issue preclusion is not mandated in the Constitution or by statute. Rather, it is the product of court precedent based on a court's exercise of its equitable powers. The Supreme Court described the derivation and purpose of collateral estoppel as follows:

Under the judicially developed doctrine of collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation. Collateral estoppel ... serves to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication."

*United States v. Mendoza*, 464 U.S. 154, 158, 104 S.Ct. 568, 571, 78 L.Ed.2d 379 (1984) (citations omitted), *quoting Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414–15, 66 L.Ed.2d 308 (1980).

■ The Court of Appeals for the Federal Circuit articulated the basic requirements for issue preclusion in *Mother's Restaurant*, 723 F.2d at 1569, as follows:

(1) the issues to be concluded are identical to those involved in the prior action; (2) in that action the issues were raised and "actually litigated"; (3) the determi-

nation of those issues in the prior action was necessary and essential to the resulting judgment; and (4) the party precluded was ... fully represented in the prior action.

This fourth requirement of full representation demands that the party has had a "full and fair chance to litigate" the issues to be precluded. *Id.* at 1569–70 n. 4. In addition, in *Commissioner v. Sunnen*, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948), the Supreme Court noted that issue preclusion "is not meant to create vested rights in decisions that have become obsolete or erroneous with time" (*id.* at 599, 68 S.Ct. at 720), and that an intervening judicial pronouncement may change the legal "atmosphere" or "climate" to such a degree as to render the doctrine inapplicable (*id.* at 600, 606, 68 S.Ct. at 720, 723).

In Sections IV and V below, this court considers, respectively, whether preclusive effect should be given to the district court's conclusions in *Acacia Villa v. Kemp* on the issues of breach of contract and the unconstitutionality of Section 801.

## IV.

Plaintiffs contend in the instant litigation that HUD's failure to calculate the periodic rent adjustments according to the AAAFs constitutes a breach of the HAP contracts. The district court addressed this very same issue in *Acacia Villa v. Kemp*. Plaintiffs argue that the four requirements for issue preclusion articulated in *Mother's Restaurant* are satisfied here because (1) the breach issue here involved is identical to the breach issue resolved in the district court action, (2) the breach of contract issue was raised and actually litigated in *Acacia Villa v. Kemp*, (3) the district court's resolution of the breach issue was necessary and essential to the judgment in *Acacia Villa v. Kemp*, and (4) defendant had a "full and fair chance" to litigate that issue in the district court action.

In response, defendant offers three reasons why this court should not apply issue preclusion. Defendant contends that (1) the purposes behind the doctrine would not be furthered, (2) there has been a change in the legal "atmosphere" since the district court's decision in *Acacia Villa v. Kemp,* and (3) defendant did not have a "full and fair chance" to litigate the breach of contract issue in the district court action.

### A.

Defendant contends that it would be inconsistent with the purposes of issue preclusion to apply the doctrine with respect to the district court's conclusion that HUD breached the HAP contracts by failing to calculate periodic rent adjustments based on the AAAFs. As set forth above, *Mendoza* summarizes the purposes of the doctrine as follows: "[to] relieve parties of the cost and vexation of multiple lawsuits, [to] conserve judicial resources, and, by preventing inconsistent decisions, [to] encourage reliance on adjudication." 464 U.S. at 158, 104 S.Ct. at 571, *quoting Allen v. McCurry,* 449 U.S. at 94, 101 S.Ct. at 414–15. Defendant argues that because this court has already addressed the breach-AAAF issue in *NLHA,* invoking issue preclusion here would neither relieve plaintiffs of additional costs nor conserve judicial resources. Similarly, as to the third purpose listed in *Mendoza,* defendant contends that issue preclusion would not prevent inconsistent judicial opinions because this court has already issued an inconsistent opinion in *NLHA.*

■ There is a threshold issue as to whether the purposes behind issue preclusion are at all relevant when deciding whether to apply the doctrine. Defendant cites *Quinones Candelario v. Postmaster General of the United States,* 906 F.2d 798, 802 (1st Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1307, 113 L.Ed.2d 242 (1991), for the proposition that collateral estoppel should not be invoked when its application would not serve its underlying purposes or goals. Plaintiffs cite *Mississippi Chemical Corp. v. Swift Agricultural Chemicals Corp.,* 717 F.2d 1374 (Fed.Cir.1983), for the opposite proposition that courts may not make case-by-case determinations as to whether the purposes behind collateral estoppel are satisfied. But *Mississippi Chemical* does not appear

to stand for such a broad, inflexible rule.[4] Given the equitable nature of issue preclusion, it cannot be said that in all cases and under all circumstances the purposes of the doctrine are irrelevant to its application. *See, e.g., United States v. Stauffer Chemical Co.*, 464 U.S. 165, 176, 104 S.Ct. 575, 581, 78 L.Ed.2d 388 (1984) (White, J., concurring) ("there is no justification for applying collateral estoppel, which is a flexible, judge-made doctrine, in situations where the policy concerns underlying it are absent.")

■ In any event, it would be unsound to conclude that the purposes behind issue preclusion would not be furthered by applying it herein. Plaintiffs first sought issue preclusion shortly after the district court decision in *Acacia Villa v. Kemp* and just prior to final oral argument that led to the decision in *NLHA*.[5] At that point in time, application of issue preclusion would have furthered all the purposes behind the doctrine—there were additional resources to be expended in litigating the breach of contract issue and there was, as of then, no inconsistent opinion.

This court did not address issue preclusion at that time solely because defendant had filed a motion to dismiss alleging that this court lacked jurisdiction to hear both *NLHA* and the instant action. Defendant contended that in enacting Section 801, Congress intended to preclude such Claims Court suits. This court then joined the instant action and *NLHA* for purposes of resolving the jurisdictional issue.

The court then proceeded to reject defendant's jurisdictional challenge in both cases. *NLHA*, 22 Cl.Ct. at 656. The court did not, however, limit its opinion to addressing jurisdiction. In the course of presenting their jurisdictional arguments, both parties made exhaustive arguments concerning the proper calculation of the periodic rent adjustments under the HAP contracts. In an effort to inform the parties as to its firm conclusions on this breach of contract issue, the court included in the opinion its interpretation of the pertinent HAP contract requirements. The court specifically indicated that it did not intend its opinion to prevent plaintiffs from pursuing issue preclusion. *Id.* at 656 n. 5. The court decided to address the breach of contract issue because even if the issue turned out not to be significant as to those plaintiffs who made no issue preclusion claim.

Thus, defendant's argument that the purposes of issue preclusion are not satisfied here can be made only because the court chose (1) to delay addressing issue preclusion until after the court resolved the jurisdictional challenge, and (2) to include in its opinion on jurisdiction the court's conclusion as to the very issue on which plaintiffs seek issue preclusion. But denying issue preclusion because a court, after a party had raised an issue preclusion claim, chose to address the very issue on which preclusion was sought, would allow courts to deny application of issue preclusion simply by ignoring the doctrine. On the particular facts of this case, it seems most appropriate to evaluate whether the purposes behind issue preclusion would be served at the point in time when plaintiffs first made the claim. Here, the court's determination to promote efficiency in *NLHA* by addressing the breach issue should not prove fatal to plaintiffs' previously raised issue preclusion claim.

### B.

■ Defendant next contends that the legal climate has changed since the district

---

**4.** *Mississippi Chemical* was a patent infringement case and was based directly on the Supreme Court's decision in *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). *Blonder–Tongue* discussed the applicability of issue preclusion in a patent action where the patentee sought to bring suit based on a patent that had been declared invalid in previous litigation. The court in *Mississippi Chemi-* cal did not indicate that it intended to establish an absolute rule applicable to all nonpatent cases.

**5.** Plaintiffs first raised the preclusion issue on January 10, 1991; the *Acacia Villa v. Kemp* decision was issued on October 31, 1990; and final oral argument in *NLHA* was heard on January 17, 1991.

court decision in *Acacia Villa v. Kemp* and that, under *Commissioner v. Sunnen*, 333 U.S. 591, 68 S.Ct. 715, issue preclusion should not apply. The purported change in legal climate involves this court's decision in *NLHA* and a subsequent decision in *Sheridan Square Partnership v. United States*, 761 F.Supp. 738 (D.Colo.1991), in which the district court cited and, in effect, agreed with this court's interpretation of the HAP contracts in *NLHA*.

These two cases do not represent a sufficient change in the legal climate so as to warrant a refusal to apply issue preclusion. First, both *NLHA* and *Sheridan Square* were decided *after* plaintiffs raised their claim of issue preclusion in this litigation. Hence, the legal climate had not changed at all at the time of plaintiffs' claim. Second, as to *NLHA*, as a matter of logic, no court would ever be bound by the doctrine of issue preclusion if, after an issue preclusion claim is made, a court could change the legal climate merely by announcing its difference of opinion with the prior court. To the contrary, "the fact that the prior judgment was simply incorrect will not affect its conclusiveness." *Moore's Federal Practice* ¶ 0.441[2]. Third, the only cases cited by defendant in which the court denied issue preclusion based on a change of legal climate involved much more significant changes, *i.e.*, a series of Supreme Court decisions (*see Commissioner v. Sunnen*, 333 U.S. at 602–03, 68 S.Ct. at 721–22), multiple circuit court decisions (*see Sohio Transp. Corp. v. United States*, 5 Cl. Ct. 620, 638 (1984)), or a change in interpretation by the very court that made the original decision on which the preclusion claim is based (*see CBN Corp. v. United States*, 176 Ct.Cl. 861, 865–66, 364 F.2d 393, 396 (1966), *cert. denied*, 386 U.S. 981,

87 S.Ct. 1284, 18 L.Ed.2d 228 (1967)).[6] Here, at most, we have the decisions of two trial-level courts which have not yet been tested on appeal.

### C.

■ Finally, defendant contends that, in any event, all the prerequisites of *Mother's Restaurant* are not satisfied here because defendant did not have a "full and fair chance" to litigate the contract interpretation issue in the district court. 723 F.2d at 1569–70, n. 4. Defendant's argument focuses on the Ninth Circuit's decision in *Rainier View*. Defendant argues that it was presented with a significant hurdle in *Acacia Villa v. Kemp* because the district court was bound by the doctrine of *stare decisis* to apply the holding of *Rainier View* when interpreting the requirements of the HAP contracts. Hence, in effect, once the district court determined that there was no material difference between the HAP contracts in the two cases, the district court was obliged to follow *Rainier View* and conclude that HUD's failure to grant periodic rent increases based on the AAAFs was inconsistent with the terms of the HAP contracts. Defendant analogizes the hurdle it faced in *Acacia Villa v. Kemp* to a recognized exception to issue preclusion—where the party against whom preclusion is sought had a significantly heavier burden of proof on the issue in the initial action than in the subsequent action. *See, e.g., Restatement (Second) of Judgments*, § 28 (1982).[7]

The full effect of defendant's argument would be that whenever there is adverse controlling precedent on an issue in the circuit in which the first case was heard, issue preclusion could not apply because

---

**6.** In *Commissioner v. Sunnen*, the intervening change in law was brought about by a series of six Supreme Court decisions. 333 U.S. at 602–603, 68 S.Ct. at 721–22. "[A] proper application of the principles as there developed [in that line of cases] might well have produced a different result" in the prior case. *Id.* at 607, 68 S.Ct. at 724. In *Sohio*, the Claims Court determined that three intervening decisions of the Courts of Appeals for the Fifth and Tenth Circuits created a sufficient change in legal atmosphere to block the preclusive effect of the prior district court

decision. In *CBN Corp.*, the Court of Claims ruled that one of its own decisions constituted a sufficient change in the legal climate as to block the preclusive effect of one of the court's earlier decisions.

**7.** Plaintiffs contend that the district court did not base its decision exclusively on *Rainier View*. But the pertinent language of the district court's order indicates that the court viewed itself as so bound.

there would be no "full and fair chance" to litigate that issue in that circuit. But defendant does not cite any case law that directly supports such a broad approach. Indeed, in the case law that has been cited, there is no suggestion that in applying issue preclusion, it is necessary to parse the first court's opinion to determine the extent to which the court deemed itself bound by controlling circuit court precedent.

Defendant's proposed rule would create a very broad exception to issue preclusion. The argument frequently could be made that the first court relied upon precedent not binding on the second court. Thus, adoption of defendant's position could drastically diminish the applicability of issue preclusion and thereby produce more litigation and frustrate the basic purposes behind the doctrine. In addition, with respect to the "fairness" of being controlled by the precedent in *Rainier View*, it should be noted that defendant here is not being subjected to circuit court precedent to which it was a stranger. Defendant participated as a party in *Rainier View* and defendant has not alleged that it lacked a "full and fair chance" to litigate the contract interpretation issue in that litigation.

█ This is not to say that the existence of such controlling precedent in the first forum should be found irrelevant in all cases when a claim of issue preclusion is made. In the instant action, plaintiffs are seeking to use the doctrine of issue preclusion "offensively," *i.e.*, to deny defendant the ability to dispute certain of plaintiffs' factual and legal allegations. "Offensive use of collateral estoppel occurs when a plaintiff seeks to foreclose a defendant from relitigating an issue the defendant had previously litigated unsuccessfully in another action against the same or a different party." *Mendoza*, 464 U.S. at 159 n. 4, 104 S.Ct. at 572 n. 4. In *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), the Supreme Court compared offensive and defensive uses of collateral estoppel and concluded that for offensive use, the trial court should have "broad discretion to determine when it should be applied." *Id.* at 331, 99 S.Ct. at

652. One reason for such discretion is that "offensive use of collateral estoppel does not promote judicial economy in the same manner as defensive use does." *Id.* at 329, 99 S.Ct. at 650. The court explained:

Defensive use of collateral estoppel precludes a plaintiff from relitigating identical issues by merely "switching adversaries." *Bernhard v. Bank of America Nat. Trust & Savings Assn.*, 19 Cal.2d [807] at 813, 122 P.2d [892] at 895. Thus defensive collateral estoppel gives a plaintiff a strong incentive to join all potential defendants in the first action if possible. Offensive use of collateral estoppel, on the other hand, creates precisely the opposite incentive. Since a plaintiff will be able to rely on a previous judgment against a defendant but will not be bound by that judgment if the defendant wins, the plaintiff has every incentive to adopt a "wait and see" attitude, in the hope that the first action by another plaintiff will result in a favorable judgment. *E.g., Nevarov v. Caldwell*, 161 Cal.App.2d 762, 767–768, 327 P.2d 111, 115; *Reardon v. Allen*, 88 N.J.Super. 560, 571–572, 213 A.2d 26, 32. Thus offensive use of collateral estoppel will likely increase rather than decrease the total amount of litigation, since potential plaintiffs will have everything to gain and nothing to lose by not intervening in the first action.

*Id.* at 329–30, 99 S.Ct. at 650–51 (footnotes omitted).

Similar undesirable "wait and see" strategic behavior would be encouraged if plaintiffs were always assured that a judgment in a district court injunctive action would be given preclusive effect in a subsequent Claims Court damage action. For example, where, as here, numerous parties have essentially identical contracts with the government, a plaintiff with a potential Claims Court damage action may choose to wait until a similarly situated plaintiff succeeds in a suit seeking injunctive relief in a particular circuit. After that success, the plaintiff could bring its own similar injunctive suit in a district court in that same circuit with the clear expectation of success. After achieving that success, the

plaintiff could then proceed to bring its own damage suit in the Claims Court on the same facts and argue that the determinations in the district court should be given preclusive effect. Granting issue preclusion in such a situation may encourage delays in filing suit and may ultimately produce more, rather than less, litigation.[8]

In any event, however, the instant record does not reveal any such strategic behavior. Plaintiffs filed suit in this court more than three weeks *before* filing *Acacia Villa v. Kemp* in the district court. Plaintiffs pressed the Claims Court action vigorously; they did not sit back and wait for the district court decision and then attempt to apply its preclusive effect here. Nor did plaintiffs file suit in the district court in the Ninth Circuit merely to obtain the benefits of issue preclusion in the Claims Court. It was necessary for plaintiffs to file in both courts because defendant, in effect, had taken the position that neither this court nor the district court was empowered to grant both the monetary and the injunctive or declaratory relief that plaintiffs sought. Finally, all of the plaintiffs here are California partnerships and all of their housing projects are located in California. Thus, the Ninth Circuit was the appropriate circuit in which to bring any district court injunctive action and plaintiffs cannot be said to have chosen the Ninth Circuit merely to benefit from favorable precedent.[9] In addition, since all of the projects are in California, allowing issue preclusion would not result in a Ninth Circuit decision affecting projects outside the Ninth Circuit.[10]

For the reasons stated above, based on the existing record, issue preclusion applies and defendant is bound by the district court's finding that HUD breached the HAP contracts by failing to grant rent increases based on the AAAFs.

## V.

In contending that issue preclusion should not apply to the district court's holding as to the unconstitutionality of Section 801, defendant does not make any arguments not already considered and rejected in the breach of contract discussion above. Indeed, not all of the arguments defendant has made with respect to the breach claim would even apply with respect to Section 801. For example, the district court considered the constitutionality of Section 801 *de novo* and resolved it on the merits rather than basing its decision on *stare decisis.* Hence, defendant does not contend that it lacked a "full and fair chance" to litigate the constitutionality of Section 801 before the district court. In this setting, on the existing record issue preclusion applies and defendant is bound by the district court's determination that Section 801 is unconstitutional.

## VI.

Next, defendant contends that certain plaintiffs here entered bilateral modifications of their HAP contracts and that notwithstanding the court's application of issue preclusion, defendant should be free to rely on those modifications in the instant action. Defendant is correct. The doctrine

---

**8.** Such a result could also tend to undermine Congress' choice to give the Claims Court exclusive damage jurisdiction for breach of contract claims in excess of $10,000. If all similarly situated plaintiffs could follow a successful injunctive suit by one plaintiff with a similar suit in the same circuit, and thereafter file Claims Court actions and secure issue preclusion on the question of breach of contract, the Claims Court, in effect, would be removed from the process of determining breach of contract liability. In effect, the original circuit injunctive opinion would control all breach of contract liability determinations in the Claims Court.

**9.** Nor would it seem appropriate to criticize these plaintiffs for failing to join in *Rainier View.* Plaintiffs here are all located in Califor-

nia and complain of the actions of California HUD field offices. The plaintiffs in *Rainier View* were located in the State of Washington and based their complaints on the actions of the Seattle HUD field office. Defendant has not alleged that the Washington district court would have been a proper venue for the California plaintiffs.

**10.** Because all projects are within the Ninth Circuit, this case does not present a situation where the grant of issue preclusion would result in Ninth Circuit law being applied to projects located in other circuits which either have adopted or might adopt a different interpretation of the HAP contracts. *See, e.g.,* Justice White's concurrence in *Stauffer Chemical,* 464 U.S. at 178–82, 104 S.Ct. at 582–84.

of issue preclusion does not prevent defendant from raising other issues not "actually litigated" in *Acacia Villa v. Kemp. Mother's Restaurant,* 723 F.2d at 1570. The district court decision dealt solely with a breach of the HAP contracts and did not address a breach of any modification thereof. Hence, defendant is not precluded from contending, for example, that as to any plaintiff, (1) the standard printed HAP contracts do not embody the entire contractual relationship between that plaintiff and HUD, and (2) the parties had reached an accord and satisfaction for past rent due.

### Conclusion

For the reasons set forth above, defendant's motion for a stay of proceedings is denied. Based on the facts currently before the court, defendant will be precluded from contesting (1) that the HAP contracts obliged defendant to calculate the periodic rent increases based on the applicable AAAFs, and (2) that Section 801 is unconstitutional.

On or before December 24, 1991, the parties shall file a status report, jointly or separately, proposing scheduling for further proceedings in this action.

IT IS SO ORDERED.