ADRIENNE VILLAGE, et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 91–1023C.

United States Claims Court.

March 16, 1992.

Stephen G. Blitch, Oakland, Cal., for plaintiffs. David R. Fredrickson and David A. Fuss, of counsel.

John E. Kosloske, with whom were Asst. Atty. Gen. Stuart M. Gerson, David M. Cohen, Director, and Terrence S. Hartman, Asst. Director, Washington, D.C., for defendant. John Herold, Howard M. Schmeltzer, and Barton Shapiro, of counsel.

## OPINION and ORDER

ANDEWELT, Judge.

In this government contract action, plaintiffs, Adrienne Village and 21 other developers of rental housing projects located within the jurisdiction of the Ninth Circuit, seek back rent payments for housing units rented to low-income families pursuant to Section 8 of the United States Housing Act of 1937, as amended, 42 U.S.C. § 1437f (the Housing Act). This action involves the proper method for calculating periodic rent adjustments due under Housing Assistance Payments (HAP) contracts plaintiffs entered with the United States Department of Housing and Urban Development (HUD).

In a June 6, 1988, decision, the Court of Appeals for the Ninth Circuit interpreted the HAP contracts to require that periodic rent adjustments be based on the most recent Automatic Annual Adjustment Factors (AAAFs) published by HUD. *Rainier View Assocs. v. United States*, 848 F.2d 988 (9th Cir.1988), *cert. denied*, 490 U.S. 1066, 109 S.Ct. 2065, 104 L.Ed.2d 630 (1989). In a March 1, 1991, opinion in *National Leased Housing Ass'n v. United States*, 22 Cl.Ct. 649 (1991) (*NLHA*), this court disagreed with the Ninth Circuit's analysis and concluded that, pursuant to the "Overall Limitation" provision in the HAP contracts, HUD was authorized to conduct comparability studies to determine rents charged for "comparable unassisted units" and then to set periodic rent adjustments based directly on such studies, rath-

er than based on the most recently published AAAFs. *Id.* at 656.

The instant action is currently before the court on the parties' cross-motions for summary judgment and on plaintiffs' motion to stay proceedings pending the district court's resolution of *Montgomery Plaza Assocs. v. Kemp*, Nos. C–91–0196 SBA and C–91–1120 SBA (N.D.Cal. filed Jan. 16, 1991), a suit filed by the instant plaintiffs concerning the same HAP contracts involved herein. Plaintiffs filed their district court action on January 16, 1991, and the instant action on March 19, 1991, which was more than two weeks *after* this court's ruling in *NLHA*. For the reasons set forth below, plaintiffs' motion for a stay of proceedings is denied, plaintiffs' cross-motion for summary judgment is denied in part, and defendant's motion for summary judgment is granted in part.

### I.

Out of the 22 HAP contracts involved herein, 21 contain an "Overall Limitation" provision with language that, in pertinent part, is identical to the language analyzed by this court in *NLHA*. Therefore, if this court were to adhere to and apply its analysis in *NLHA*, it should grant partial summary judgment against these 21 plaintiffs on their claim that they are entitled to rent adjustments based on the applicable AAAFs.[1]

■ Plaintiffs contend that *NLHA* was wrongly decided. But this court has reviewed its *NLHA* decision and remains convinced that its interpretation of the HAP contracts is correct. Plaintiffs argue that in its *NLHA* opinion, this court acknowledged that the HAP contracts are not free of ambiguity, but then proceeded to ignore its obligation under the doctrine of *contra proferentem* to interpret the ambiguous

---

**1.** Plaintiff Avondale Edgewater Apartments' HAP contract is unique. Section 18 of that contract, entitled "Rent Adjustments," states that contract rents "shall be adjusted by HUD in accordance with HUD regulations and administrative procedures." However, it also provides that "[t]he Owner agrees that rents charged for

other comparable units in the project will not be less than the contract rents except when authorized ... by HUD." The contract also incorporates "representations" and "agreements" made in "any applicable regulations" and in "HUD's administrative procedures." This court's ruling herein does not encompass this plaintiff.

"Overall Limitation" provision against the interests of the drafter, which in this case is HUD. But while the court acknowledged in *NLHA* that Section 8 of the Housing Act was potentially ambiguous, 22 Cl. Ct. at 660, the court concluded that the language of the contracts' "Overall Limitation" provision was "straight-forward," *id.* at 658, and "very precise[ ]," *id.* at 659. Therefore, the doctrine of *contra proferentem* does not apply.

■ Next, plaintiffs assert that the court's interpretation of the "Overall Limitation" provision would result in a commercially unreasonable contract because it would permit the government unilaterally to alter the value of the contract by using its own comparability studies to determine the amount of rent adjustments. But, as explained in *NLHA*, even under the *Rainier View* interpretation, comparability studies can serve as a basis for setting rent adjustments. Instead of allowing rent adjustments to be based directly upon comparability studies, *Rainier View* would simply force HUD to translate those studies into modified AAAFs. *Id.* at 662. But, under either approach, the rent increase should be the same.[2] Thus, the *NLHA* interpretation renders the contract no more commercially unreasonable than the *Rainier View* interpretation, which plaintiffs favor.

■ Next, plaintiffs contend that HUD's prior conduct in regularly applying the AAAFs demonstrates that the parties intended at the time of the contract to mandate use of the AAAFs in setting rent adjustments. But because plaintiffs have not demonstrated that the relevant HAP contract language is ambiguous, this evidence is irrelevant to the interpretation of the contracts. In addition, HUD has not been shown in any way to have legally waived its right, under the HAP contracts, to base the rent adjustments on comparability studies. Therefore, HUD properly could base the rent adjustments on compar-

ability studies notwithstanding its prior use of AAAFs.

As stated above, in view of its determination in *NLHA*, if the court were to reach the merits of this action, it would grant defendant's motion for summary judgment to the extent defendant asks this court to hold that the 21 plaintiffs are not contractually entitled to have their rent adjustments based upon the AAAFs. However, such a conclusion would not rule out a breach of contract here. Under the "Overall Limitation" provision of the HAP contracts, plaintiffs, in effect, are entitled to rents "not materially different" than the rents charged for comparable unassisted units. Therefore, to the extent plaintiffs received materially less than the comparable level of rents, HUD may have breached the HAP contracts. *See National Leased Housing Ass'n v. United States*, 24 Cl.Ct. 647 (1991). Neither party has proffered evidence on this issue.

II.

■ Plaintiffs ask this court not to reach the merits of their claim to entitlement to rent adjustments based on AAAFs but instead to stay its ruling pending the district court's decision in the Ninth Circuit in *Montgomery Plaza*. Plaintiffs' request is apparently grounded on their expectation that the district court, bound by *Rainier View*, will rule in plaintiffs' favor. After such a district court decision, plaintiffs presumably would then ask this court to grant preclusive effect to the prior *Montgomery Plaza* decision. In *Acacia Villa v. United States*, 24 Cl.Ct. 445 (1991), notwithstanding *NLHA*, this court granted preclusive effect to the decision of a Ninth Circuit district court in a case raising the same HAP contract interpretation issue as involved in the instant action.

To address a request for a stay, this court must assess and then balance the competing interests of the parties. *Landis v. North American Co.*, 299 U.S. 248, 254–55, 57 S.Ct. 163, 165–66, 81 L.Ed. 153

---

**2.** In *NLHA*, the court explained: "Whichever methodology is employed, the rent adjustment, in effect, would be based on the same comparability study and the amount of the rent adjustment should be the same." 22 Cl.Ct. at 662.

(1936). Here, the paramount interest of the parties at stake in plaintiffs' request for a stay is apparent—the identity of the forum that will first address the question of the proper interpretation of plaintiffs' HAP contracts. Assuming this court and the district court were independently to resolve on the merits plaintiffs' claim that rents must be calculated based on AAAFs, the outcome of those two cases would seem clear. In view of *Rainier View,* plaintiffs would prevail in the district court but in view of *NLHA,* plaintiffs would lose in this court. One possible exception to this outcome would be if the court that addresses the issue second in time determines not to address the matter on the merits but decides instead to give the decision of the first court preclusive effect. *See, e.g., International Order of Job's Daughters v. Lindeburg & Co.,* 727 F.2d 1087, 1090 (Fed. Cir.1984); *Mother's Restaurant, Inc. v. Mama's Pizza, Inc.,* 723 F.2d 1566, 1569 (Fed.Cir.1983). Hence, plaintiffs would prevail in this court only if this court grants a stay and then gives the district court's decision preclusive effect. But this interest of plaintiffs would not warrant the grant of a stay. Plaintiffs certainly have no greater interest than defendant in obtaining a favorable forum.

Plaintiffs raise other "interests" but none is of sufficient weight to support the grant of a stay. Plaintiffs emphasize that the instant action was filed after *Montgomery Plaza.* But even though plaintiffs had filed first in district court, that court stayed its action for several months. In its order granting the stay, the district court noted that "both parties acknowledge the fact that the Claims Court decision has already progressed beyond the action in this Court." *Montgomery Plaza Assocs. v. Kemp,* Nos. C–91–0196 SBA and C–91–1120 SBA, order at 2 (Oct. 18, 1991). The fact that the district court action was filed first is less important than the amount of progress that has been made in the respective courts. *See Moses H. Cone Memorial Hospital v. United States,* 460 U.S. 1, 21, 103 S.Ct. 927, 939, 74 L.Ed.2d 765 (1983). Here, this court is prepared to address the pertinent merits of the instant summary judgment motions.

Next, plaintiffs contend that they have a strong interest in a district court decision because the district court decision will have a prospective effect while this court's decision only will affect payments for past rent adjustments. This argument is unconvincing for two reasons. First, because a split of jurisdiction is involved, with the district court having jurisdiction over the declaratory relief plaintiffs seek and this court having jurisdiction over plaintiffs' claim for past damages, plaintiffs will have to pursue both actions in order to secure all of the relief they seek. Since it will be necessary to proceed in both courts, the central remaining question is essentially one of timing. As explained above, plaintiffs' interest in having this court decide second is at least matched by defendant's interest in having this court decide first. Second, any decision in this court in reaching the merits of plaintiffs' claim in effect would have a prospective significance. This court's interpretation of the HAP contracts in the instant case presumably would be given collateral estoppel effect if plaintiffs were forced in the future to bring a new Claims Court action because HUD calculated future rent adjustments in a manner inconsistent with that required by the instant case.

Next, plaintiffs argue that it is unfair to hold them to the rule established in *NLHA* because plaintiffs did not willingly choose the Claims Court as a forum. Had the government complied with *Rainier View,* plaintiffs argue, the instant case would not have been necessary. But it was Congress, not defendant, that vested this court with jurisdiction over plaintiffs' claims to back rent. Defendant hardly can be blamed for insisting on litigating its financial liability in a forum that Congress specifically selected for that litigation.

Plaintiffs also assert that proceeding to judgment here would likely result in each plaintiff being subjected to inconsistent judgments. But given *NLHA* and *Rainier View,* there will be inconsistent judgments between the district court and this court in

interpreting the HAP contracts unless the court that addresses the issue second decides to give preclusive effect to the decision of the court that addresses the issue first. Hence, the concern about inconsistent judgments first arises, and can be properly addressed, only after there has been a first judgment.

Plaintiffs are correct that this court's application of *NLHA* will result in inconsistencies in that plaintiffs will be treated differently than other HAP contractors. But such inconsistencies, at least in the short run, became inevitable once this court determined in *NLHA* to disagree with the approach taken in *Rainier View*. *NLHA* resulted in two sets of project owners with identical contracts, the *NLHA* plaintiffs and the *Rainier View* plaintiffs, being treated differently. The ultimate question presented in the instant litigation, in effect, is with which group the instant project owners will be placed—the *NLHA* plaintiffs whose back rent adjustments can properly be calculated based directly on comparability studies or the *Rainier View* plaintiffs who are entitled to have back rents calculated based on applicable AAAFs. No matter which choice this court or the district court makes, inconsistency will result in that the instant plaintiffs will be treated differently than other project owners with the same HAP contracts.[3]

In any event, any inconsistencies presumably will be resolved through the appellate process. Plaintiffs will be able to appeal this court's decision to the Court of Appeals for the Federal Circuit. If the Federal Circuit agrees with *Rainier View*, all project owners will be treated alike. On the other hand, if the Federal Circuit agrees with *NLHA*, there will be a split in the circuits and the plaintiffs in both *NLHA* and the instant action could seek certiorari in the Supreme Court pursuant to 28 U.S.C. § 1254 (1988) and Rule 10.1(a) of the Supreme Court. A Supreme Court resolution should assure that all future litigation involves the identical interpretation of the "Overall Limitation" provision of the HAP contracts.

### III.

In view of the above, this court will deny a stay here because an analysis of the competing interests does not support the grant of a stay.[4] The essence of plaintiffs' request for a stay is to ask this court to sacrifice defendant's interest in order to further plaintiffs' own identical interest—resolution of the case in a forum with favorable precedent. Plaintiffs simply have not presented any compelling rationale that would warrant disadvantaging defendant by permitting plaintiffs to avoid a Claims Court decision that was in effect prior to institution of the instant action. There simply is no convincing reason why this court should not immediately address the fully briefed summary judgment motions. For the reasons set forth above, plaintiffs' request for a stay is denied, plaintiffs' cross-motion for summary judgment is denied in part, and defendant's

---

**3.** The court appreciates that denying a stay could result in the instant plaintiffs being treated differently than the project owners in *Rainier View* even though the respective projects of plaintiffs herein and the plaintiffs in *Rainier View* are located in the same circuit. But the location of project owners in a particular circuit should not be controlling in this court. The Claims Court has nationwide jurisdiction and the instant plaintiffs have no greater claim to receive a favorable interpretation of their HAP contracts than would a signatory of the same HAP contract whose project is located outside of the Ninth Circuit.

**4.** *Acacia Villa* does not warrant a different result. *Acacia Villa* did not involve a request for a stay. Furthermore, in *Acacia Villa* there had been a Ninth Circuit district court decision in the plaintiffs' favor *prior to* the completion of supplemental briefing on defendant's motion to dismiss which led to the decision in *NLHA*. Herein, there has not been any decision by the district court to which preclusive effect can be given. In addition, the plaintiffs in *Acacia Villa* filed their Claims Court action over a year *before* this court's decision in *NLHA*. The instant plaintiffs filed this action *after NLHA*. Thus, unlike *Acacia Villa*, herein, the law of this court on the proper interpretation of the HAP contracts had already been determined prior to the filing of the suit.

motion for summary judgment is granted in part.[5]

In response to a joint motion by the parties in *National Leased Housing Ass'n v. United States,* 24 Cl.Ct. 647 (1991), this court entered judgment against certain plaintiffs under RUSCC 54(b) on certain of their claims involving the same HAP contract interpretation issue decided here. As required by Rule 54(b), this court made an express determination that there was no just reason for delay in entering judgment on these claims. The *NLHA* plaintiffs anticipate filing an appeal addressing this court's interpretation of the "Overall Limitation" provision of the HAP contracts. Entry of a similar judgment under Rule 54(b) herein may permit the 21 plaintiffs, whose HAP contracts contain the identical pertinent language, to have their appeal heard at the same time as the *NLHA* plaintiffs. If plaintiffs herein believe that such an order would be beneficial, they shall so notify the court forthwith.

### CONCLUSION

For the reasons set forth above, plaintiffs' motion for a stay is denied, plaintiffs' cross-motion for summary judgment is denied in part, and defendant's motion for summary judgment is granted in part. On or before April 16, 1992, the parties shall file a status report, jointly or separately, proposing further scheduling in this action.

IT IS SO ORDERED.

---

**5.** In Count II of the complaint, plaintiffs also allege that the enactment of Section 801 of the HUD Reform Act of 1989, Pub.L. No. 101–235, 103 Stat.1987, 2057, was unconstitutional because it deprived plaintiffs of property without just compensation, violated due process, and "questioned the public debt." The "property" alleged appears to be plaintiffs' entitlement to rent adjustments based on the AAAFs. But as explained above, this court takes the position that under the HAP contracts, plaintiffs were not automatically entitled to rents adjusted by application of the AAAFs. Rather, plaintiffs were entitled only to rents "not materially different" than the rents charged for comparable unassisted units. It is not clear from the complaint whether plaintiffs contend that the rents allowed under Section 801 were materially less than the rents charged for comparable unassisted units. Therefore, it is not apparent whether plaintiffs intend to pursue this claim. In this context, it is premature for the court to address the constitutional issues. The parties should address these issues in their next status report.