**Donat Gerg HAUSTECHNIK, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 94–364C.

United States Court of Federal Claims.

Feb. 2, 1996.

Reed L. von Maur, Sulzbach, Germany, for plaintiff. David V. Anthony, Kevin P. Mullen, and Mary Ita Snyder, Piper & Marbury, L.L.P., Washington, D.C., of counsel.

Lance J. Lerman, with whom were Assistant Attorney General Frank W. Hunger, and David M. Cohen, Washington, D.C., for defendant. Stanley E. Alderson, Commercial Litigation Branch, Department of Justice, Washington, D.C., of counsel.

OPINION

BRUGGINK, Judge.

This is an appeal brought pursuant to the Contract Disputes Act ("CDA"), 41 U.S.C.

§§ 601–613 (1994). The dispute arises from a government contract for the replacement of the interior heating system at the United States military installation in Katterbach, Germany. The plaintiff, Donat Gerg Haustechnik ("Gerg"), appeals the contracting officer's determination that Gerg is liable to the Government in the amount of DM 500,-000 for a violation of the Anti–Kickback Act ("the Act"), 41 U.S.C. §§ 51–58 (1994), as well as the contract's anti-kickback clause.[1] In response, the Government has brought multiple counterclaims based upon bribery and fraud allegations. Plaintiff moves for "summary disposition" of the case, seeking a declaration that the contracting officer lacked the authority to make a determination that Gerg violated the Act. In the alternative, Gerg has moved to dismiss the Government's counterclaims, averring that this court lacks jurisdiction to hear counterclaims brought against a plaintiff whose underlying action is not an affirmative claim, but is solely in the nature of a "defensive" or appellant-type claim. In addition, both parties move this court to stay the proceedings in this case to await disposition of related litigation pending in Germany. The Government also requests that this court require a stay in related proceedings before the Armed Services Board of Contract Appeals ("ASBCA").

After briefing and oral argument, the court concludes that: (1) the court has jurisdiction over the contracting officer's decision finding Gerg liable pursuant to the Act, irrespective of whether the contracting officer acted within his authority; and, (2) that the court has jurisdiction over the Government's counterclaims based upon the Tucker Act, 28 U.S.C. § 1491 (1994), and the Court of Federal Claims' counterclaim statutes, 28 U.S.C. §§ 1503, 2508 (1994). Therefore, Gerg's motion to dismiss the Government's counterclaims is denied. In addition, because the question of the contracting officer's authority was not fully addressed by the briefing, Gerg's motion for summary disposition is denied without prejudice. Lastly, the court grants the parties' motions to stay these proceedings pending the outcome of the German civil suit, but denies the Government's

[1] The anti-kickback contract clause merely repeats the language of the Act.

request that this court require a stay in the ASBCA proceedings.

## BACKGROUND

The Government awarded Gerg the contract at issue, No. DAJA04–87–C–0864, on April 28, 1987 ("the Katterbach contract"). The project was completed timely, and accepted by the Government on September 22, 1989.

On June 2, 1993, the contracting officer issued a final decision asserting that Gerg is liable to the Government in the amount of DM 500,000 for violating the Act. The contracting officer concluded that Gerg paid this sum to a competing bidder in order to obtain information concerning its competing bid and to ensure that Gerg was awarded the contract. This competing bidder apparently later became a subcontractor to the Katterbach contract. This appeal followed.

In its answer, the Government has asserted ten counterclaims: (1) a violation of the civil False Claims Act, 31 U.S.C. § 3729 (1994), by submission of a claim for payment incorrectly representing the quality and quantity of goods actually supplied to the Government; (2) a violation of the civil False Claims Act through conspiracy to submit false claims; (3) liability under section 604 of the CDA based on alleged fraud committed by Gerg; (4) a Special Plea in Fraud, 28 U.S.C. § 2514 (1994), seeking forfeiture of Gerg's entire complaint in this action; (5) common law unjust enrichment based upon Gerg's alleged receipt of payments inflated by bid-rigging; (6) common law fraud based upon Gerg's alleged bid-rigging and inflated claims for payment; (7) that the United States made payments due to Gerg's misrepresentations; (8) common law breach of contract based upon Gerg's alleged fraudulent conduct; (9) a violation of the Anti–Kickback Act based upon Gerg's alleged payment of money to a competing bidder and subcon-

tractor; and, (10) common law inducement of breach of fiduciary duty based upon Gerg's alleged bribes to an employee of the United States Army.[2]

In addition to the current action before this court, Gerg has appealed four final contracting officer decisions to the ASBCA: (1) the withholding of Gerg's final invoice in the amount of DM 672,698.65; (2) the determination of liability for DM 1,179,765.21 alleging Gerg failed to install the proper quantity of transmission cable and PVC as specified under the contract; (3) the determination of liability for DM 201,943.48 alleging that the cable actually installed by Gerg was telephone cable, instead of data transmission cable as specified by the contract; and, (4) the termination of the contract for default due to Gerg's alleged failure to submit to a DCAA audit. The matters before the ASBCA do not include any fraud allegations. As of this date, the parties have fully tried all appeals pending before the ASBCA and are awaiting disposition by the Board.[3]

On November 8, 1993, approximately six months after the ASBCA heard the Katterbach contract claims, the United States brought a civil action in German district court naming several defendants, including Gerg.[4] The United States alleged causes of action under both German and United States law for price-fixing, bribery, fraud, inducing breach of fiduciary duty, and bid-rigging. That action is still pending.

## DISCUSSION

1. *Jurisdiction Over the Contracting Officer's Finding of a Violation of the Anti–Kickback Act*

Gerg urges the court to hold that the contracting officer does not have the authority to find contractor liability under the Anti–Kickback Act or the anti-kickback contract clause. Therefore, according to Gerg, the

---

2. All of the Government's counterclaims, except the claim based upon the CDA, are claims presently before the German district court.

3. The Government moved for a stay in the ASBCA proceedings after a full hearing in the case. It was opposed by the plaintiff, and denied by the ASBCA on October 6, 1995.

4. Although Gerg was not initially named as a defendant in this action, the United States amended its complaint to include both Gerg and the firm's managing director, Donat Gerg, Jr.

decision was invalid. The decision thus cannot constitute a final contracting officer decision upon which this court's jurisdiction could be predicated. It follows, according to Gerg, that there is no basis for the court's exercise of jurisdiction over the Government's counterclaims. The difficulty with this argument is apparent. Either the court has subject matter jurisdiction or it does not. If it does not, then the court cannot address the merits of the underlying action. In this case, it would mean that the court could not rule as to the underlying validity of the contracting officer's decision.

■ Nevertheless, the court concludes that it does have jurisdiction. The court may hear a contractor's appeal from a contracting officer's final decision pursuant to both section 609 of the CDA, and the Tucker Act. *See* 41 U.S.C. § 609; 28 U.S.C. § 1491. The only prerequisite to jurisdiction under these provisions is "a final decision by the contracting officer on a claim, whether asserted by the contractor or the government." *Sharman Co., Inc. v. United States,* 2 F.3d 1564, 1568 (Fed.Cir.1993) (citations omitted). The requisites of a "final decision," in turn, are set out in the CDA and the Federal Acquisition Regulations contained within Title 48 of the Code of Federal Regulations. The CDA requires that the contracting officer "state the reasons for the decision reached and ... inform the contractor of his rights as provided ... [under the CDA]." 41 U.S.C. § 605(a). Applicable regulations provide that the written decision should include a statement indicating that the decision constitutes "the final decision of the contracting officer," and require that the decision include information concerning the party's right to appeal. 48 C.F.R. § 33.211(a)(4)(v) (1994). *See generally Placeway Constr. Corp. v. United States,* 920 F.2d 903, 906–07 (Fed.Cir. 1990) (relaxing the formal requirement to include the "boilerplate language" regarding appeal rights); *Volmar Constr., Inc. v. United States,* 32 Fed.Cl. 746, 754–55 (1995) (discussing the *Placeway* and *Sharman* deci-

sions, as well as the requirements set out by the CDA and the FAR).

■ The contracting officer's letter setting forth the decision at issue was titled "Contracting Officer's Final Decision on Third Government Claim ...," it set forth the contracting officer's findings and rationale, and it properly informed Gerg of its avenues for appeal. Gerg does not contend that the decision was procedurally flawed at the time the complaint was filed. *See Sharman Co., Inc.,* 2 F.3d at 1569 ("jurisdiction must be determined 'under the actual circumstances existing at the time a complaint is filed.' ") (quoting *Sharman Co., Inc. v. United States,* 24 Cl.Ct. 763, 769 (1991)). As this court's predecessor stated in connection with similar language applicable before the passage of the Contract Disputes Act:

> The telegram-notice gave in summary fashion the reasons for defaulting plaintiff, notified it that its contract was terminated for default, stated that the telegram was the contracting officer's "final decision", and that plaintiff could appeal within 30 days. It is immaterial whether or not the reasons given for the termination were in fact correct; that was a matter that could be gone into on the appeal itself.... [T]he only important aspect of the notice is whether it fulfilled its function of alerting the contractor to the action taken, and starting the time for appeal.

*Maney Aircraft Parts, Inc. v. United States,* 197 Ct.Cl. 159, 161–62, 453 F.2d 1260, 1261 (1972). *See* JOHN CIBINIC, JR. & RALPH C. NASH, JR., ADMINISTRATION OF GOVERNMENT CONTRACTS at 1289–98 (3d ed.1995). The court holds, therefore, that the letter constitutes a final decision, and provides a basis for appeal pursuant to the CDA. Gerg's real contention is that the decision was erroneous as a matter of law. For the court to consider that issue, however, the court must make a determination on the merits of plaintiff's claim, which presumes the proper exercise of jurisdiction.[5] The court thus has jurisdiction over Gerg's appeal. Therefore, absent some

---

5. The court does not find it necessary, at this time, to rule on the question of whether the contracting officer acted within his authority or contrary to law.

The court will rule on this question when the parties have more thoroughly briefed and argued this point.

other reason to dismiss them, the court has jurisdiction over defendant's counterclaims.

### 2. *Jurisdiction Over the Government's Counterclaims*

Gerg asserts that the Government cannot bring a counterclaim if Gerg's underlying claim is solely an "appeal" from a contracting officer's decision granting the Government money. In other words, Gerg avers that its defensive action is not a "claim" to which the Government may attach a counterclaim. Gerg points to specific language within the court's previous and current counterclaim statutes to support its position. The present statute providing for registration of judgments for counterclaims and set-offs for this court states:

> Upon the trial of any suit in the United States Court of Federal Claims in which any set-off, counterclaim, claim for damages, or other demand is set up on the part of the United States *against any plaintiff making a claim against the United States in said court,* the court shall hear and determine such claim or demand both for and against the United States and plaintiff.

28 U.S.C. § 2508 (1994) (emphasis added).[6] In addition, the first statute to provide this court with counterclaim jurisdiction stated:

> [this court] shall also have jurisdiction of all set-offs, counterclaims, claims for damages, whether liquidated or unliquidated, or other demands whatsoever, on the part of the Government against *any person making claim against the Government* in said Court; . . . .

12 Stat. 765 (37 Cong.Sess.III Ch. 92, 1863) (emphasis added).[7]

Gerg contends that the language, "any plaintiff making a claim," and "any person

making a claim," as well as "claimant against the Government," presumes plaintiff is making an affirmative demand for money. Since, in this instance, Gerg is not "making a claim," but merely invoking this court's CDA jurisdiction as a defensive appeal, it argues that the Government may not take advantage of the court's counterclaim jurisdiction.

■ The court is not persuaded that such a narrow reading of the these statutes is appropriate. Our counterclaim jurisdiction is to be construed broadly. *See Continental Management, Inc. v. United States,* 208 Ct. Cl. 501, 506 n. 2, 527 F.2d 613, 616 n. 2 (1975) ("[u]nder this court's counterclaim statute (28 U.S.C. § 1503) and our rules (Rule 40) the Government may set up a counterclaim even though (a) it does not arise out of the transaction or occurrence that is the subject matter of the petition and (b) it states a claim of a type (*e.g.* tort) of which we would not have jurisdiction if sought to be maintained by a plaintiff.") (citations omitted); *Cherry Cotton Mills, Inc. v. United States,* 327 U.S. 536, 539, 66 S.Ct. 729, 730, 90 L.Ed. 835 (1946) (stating, "[w]e have no doubt but that the set-off and counterclaim jurisdiction of the Court of Claims was intended to permit the Government to have adjudicated in one suit all controversies between it and those granted permission to sue it . . . ."). There is no basis within the statutory language or within reason to limit "claims" under section 1503 or section 2508 to demands for money. The least strained way to read the counterclaim provisions is that counterclaims can be asserted against any cause of action presented in a complaint.

### 3. *Stay of Proceedings in this Court*

■ Both parties request that the present case be stayed until the German proceeding

---

6. The court's present set-off statute provides:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any set-off or demand by the United States against any plaintiff in such court.

28 U.S.C. § 1503 (1994). This section did not change the substance of the prior counterclaims statute, 28 U.S.C. § 250(2) (1946). *Frantz Equip. Co. v. United States,* 122 Ct.Cl. 622, 628, 105 F.Supp. 490, 494 (1952) ("[s]ection 1503 . . . made no change in the substance and effect of this [28 U.S.C. § 250(2)] jurisdictional provision . . .").

7. The original counterclaim statute was revised in 1911, but retained relatively the same language. It stated in pertinent part:

> The Court of Claims shall have jurisdiction to hear and determine the following matters: . . . All set-offs, counterclaims, claims for damages, whether liquidated or unliquidated, or other demands whatsoever on the part of the Government of the United States against any *claimant against the Government* in said Court; . . . .

28 U.S.C. § 250(2) (1946) (emphasis added).

is concluded. We agree that the similarity of issues pending before the two tribunals require this court to stay these proceedings for reasons of judicial economy, as well as to avoid the possibility of inconsistent decisions. *See Northrop Corp. v. United States,* 27 Fed. Cl. 795, 801–802 (1993) (staying action pending district court decision regarding qui tam plaintiffs, stating this court "follows the general rule that ... the 'doctrine of comity' requires that litigation continue in the court in which it first began," but that a stay "generally depends on the threat of inconsistent decisions.") (citations omitted). This action, therefore, is stayed pending the conclusion of litigation before the German district court.

### 4. *Stay of the ASBCA Proceedings*

■ The Government, moreover, asks the court to require Gerg to request a stay in the matter before the ASBCA in order to postpone the Board's decision until after this court rules on the merits of the present action. The Government does not point to any statutory authority for issuing such a mandate. The court recognizes that the matters before the Board may become moot if the Government is successful on its counterclaims in this action. The court believes, however, that to require a stay would be contrary to judicial economy, since the ASBCA has already heard the evidence and had post-trial briefing on the claims before it. In addition, the court notes that the merits of the claims pending before the Board are also implicated in the German civil action, and it may well be that the German court would wish to hear the Board's ruling on common matters. Thus, this request is denied.

### CONCLUSION

The court concludes that it has jurisdiction over Gerg's appeal of the contracting officer's decision, as well as the Government's counterclaims. Neither the question of the contracting officer's authority under the Act, nor the validity of the contracting officer's decision, if he possessed such authority, need be addressed at this time. Accordingly, plaintiff's motion is denied. Further, this action is stayed pending resolution of the action in the German district court. Absent a prior resolution in that forum, defendant is directed to file a status report on or before July 19, 1996, reporting on progress in that proceeding.