**NEW YORK POWER AUTHORITY,**
**Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 97–236C.**

United States Court of Federal Claims.

Jan. 29, 1999.

---

Robert A. Mangrum, Washington, D.C., for plaintiff.

Theodore R. Carter, III, Washington, D.C., with whom was Assistant Attorney General Frank W. Hunger, for defendant.

## OPINION

REGINALD W. GIBSON, Senior Judge.

### INTRODUCTION

In this case for breach of contract, the plaintiff New York Power Authority (New York Power) alleges that the government retroactively increased the purchase price of enriched uranium services by issuing a "special assessment" to fund the decommissioning and decontaminating costs associated with the government's uranium enrichment facilities. New York Power seeks $17,230,241.68 as damages and restitution for the government's wrongful act, as well as a declaratory judgment that the special assessments are unlawful and an injunction prohibiting the government from collecting future special assessments. A substantially similar breach of contract claim, brought by a different party, was rejected by the Federal Circuit, whose rejection would be binding precedent on that issue in this court. New York Power now requests that this court stay the present proceeding while it pursues separate litigation in the United States District Court for the Southern District of New York, in con-

cert with 21 other utilities, challenging the constitutionality of the scheme imposing the assessments and seeking declaratory and injunctive relief. New York Power also requests a stay pending a decision in a similar case filed before another judge of this court. For the reasons discussed below, we hold that New York Power's motion for a stay of proceedings is granted pending a final judgment in the district court.

### FACTS[1]

On March 28, 1997, New York Power filed a complaint in this court seeking recovery of the Decontamination and Decommissioning Fund (D & D Fund) special assessments imposed by the Department of Energy under authority of the Energy Policy Act of 1992. The basis of its claim arises from contracts in which New York Power purchased uranium enrichment services from the government dating back to 1970. The contracts at issue in this case have been fully performed by both sides. The D & D Fund was established to pay for the cost of decontaminating and decommissioning the government's uranium processing facilities. Financing for the D & D Fund comes from two sources: 1) annual appropriations from the government, and 2) special assessments from domestic utilities who have purchased uranium processing services before October 24, 1992, either directly from the government or through third parties. 42 U.S.C. § 2297g-1. As of the filing date of this complaint, New York Power has paid five special assessments totaling $17,230,241.68.

### PROCEDURAL POSTURE

This claim is one among 30 similar challenges to the D & D Fund assessments in the Court of Federal Claims, which altogether seek $600 million in monetary relief. In its complaint before this court, New York Power asserts four counts:

(i)  Breach of Contract, i.e., the special assessment is a breach of its uranium enrichment services with the

---

1. The court has relied primarily on the plaintiff's complaint for the factual history presented be-

low.

government because the government is retroactively increasing the price of their contract.

(ii) Uncompensated Taking of a Property Interest, i.e., the assessment is a taking of a property interest in the economic benefits flowing from its uranium enrichment contract at fixed prices.

(iii) Assessments on Third–Party Purchases are an Illegal Exaction, i.e., the assessment attributable to its purchases of enrichment from third parties is an illegal exaction because it violates due process (because it is excessively retroactive) and equal protection (because it requires a utility to pay assessments for indirect purchases when it has no right to impose assessments for direct purchases).

(iv) Declaratory and Injunctive relief, i.e., it requests a declaration that such assessments are unlawful and an injunction prohibiting further collection of such special assessments under this court's ability to grant such relief to afford complete relief to the parties.

The present claim was initially stayed on May 29, 1997, pending appeal of *Yankee Atomic Electric Co. v. United States*, 33 Fed. Cl. 580, 582 (1995), a previously-decided case brought by another utility challenging the same statute on the same grounds as the first two grounds in the present complaint. The lower court in *Yankee Atomic* had held that the assessments were a taking of the utility's vested rights under its contract. *Id.* at 586. On appeal, the Federal Circuit rejected the notion implicit in the lower court's analysis that the assessment was a retroactive price increase; instead, it viewed the assessment as a legitimate exercise of the sovereign's taxing power. *Yankee Atomic Electric Co. v. United States*, 112 F.3d 1569, 1573 (1997). It reached this conclusion by applying the sovereign acts doctrine—because the special assessments were targeted on those utilities that used and benefitted from enriched uranium services rather than targeting only those utilities who had contracted with the government. Congress must have intended to address the cost of a societal problem that it discovered only after performance of its uranium enrichment contracts. The court concluded, therefore, that the act constituted a sovereign act of Congress rather than an increase in price of its prior contracts with utilities. *Id.* at 1575. The court also concluded that the prior contracts did not contain an unmistakable promise by the government that precluded it from later exercising its sovereign power and imposing the assessments. *Id.* at 1579–80. In a footnote, the appeals court also asserted that it had disposed of the takings argument when it concluded that the contracts did not contain an unmistakable promise against future assessments, because Yankee Atomic would have no vested property rights that could be taken by the assessment. *Id.* at 1580 n. 8. Yankee Atomic then petitioned for a writ of certiorari from the Supreme Court.

After the Federal Circuit's reversal and before the Supreme Court's decision on the petition for certiorari, 21 utilities (including plaintiff herein) filed suit in a United States district court challenging the special assessments. Their complaint asserts seven counts:

(i) Declaratory Judgment on Unconstitutional Taking, i.e., that the retroactive nature and imposition of liability on a limited class of persons affects a taking of the utilities' vested property interests in economic benefits represented by the various contracts.

(ii) Declaratory Judgment on Violation of Due Process, i.e., the special assessments violate due process because they impose liability on utilities for transactions completed 40 years ago.

(iii) Declaratory Judgment on Due Process, i.e., the special assessments constitute a tax that violates due process because they are levied on a narrow base and on those not responsible for the contamination while the benefit goes to all citizens.

(iv) Declaratory Judgment on Impairment of Fixed–Price Contracts, i.e., the assessments have the effect of violating the fixed-price contracts be-

tween the utilities and the government because they retroactively increase the prices the utilities were contractually obliged to pay.

(v) Declaratory Judgment on Impairment of Settlement Agreements, i.e., the special assessments have the effect of violating the terms of settlement agreements whereby utilities were relieved of any and all obligations to pay additional sums for the enrichment services provided by the government.

(vi) Declaratory Judgment on Bad Faith, i.e., the government violated its duty of good faith and fair dealing when, under the guise of exercising its sovereign powers, the government was in fact modifying the price provisions of their contracts.

(vii) Injunctive Relief, i.e., the special assessments are causing the utilities unusual hardship and irreparable injury entitling them to an injunction because they have paid $569 million to date and will be required to pay approximately $1.1 billion more in the future.

Shortly after the district court action was filed, the Supreme Court issued its decision in *Eastern Enterprises v. Apfel*, 524 U.S. 498, —— & ——, 118 S.Ct. 2131, 2153 & 2158, 141 L.Ed.2d 451 (1998), holding invalid a special assessment under the Coal Industry Retiree Health Benefit Act of 1992. The Supreme Court decision was not a majority opinion but was rather a plurality opinion—four of the justices found the assessment invalid due to the takings clause and one justice found the assessment invalid under the due process clause.

One day after the *Eastern Enterprises* decision, the Supreme Court denied Yankee Atomic's petition for certiorari. Final judgment was, therefore, entered in *Yankee Atomic* on August 13, 1998, and the stay on the subject proceeding was lifted on August 28, 1998. One month later, on September 28, 1998, New York Power filed a second motion to *again* stay the proceedings on two grounds: (i) to await the decision of the United States district court regarding the plaintiffs' constitutional claims, and (ii) to allow a similar case before another judge in the Court of Federal Claims to proceed as the lead case. Therefore, we must decide on this motion whether a stay of proceedings in this case is appropriate either due to the action filed in the United States district court or due to a similar proceeding before this court.

### DISCUSSION

#### A. LEGAL STANDARDS FOR A STAY OF PROCEEDINGS

The power to stay proceedings is not a power expressly enumerated under the Rules of Civil Procedure. 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure, § 1360 (2d ed.1990). Rather, the power to stay derives from "the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936); *Cherokee Nation of Oklahoma v. United States*, 124 F.3d 1413, 1416 (Fed.Cir. 1997). Moreover, lower courts, in addressing a request for a stay, often try to "maximize the effective utilization of judicial resources and to minimize the possibility of conflicts between different courts." Wright & Miller, *supra.* A stay, therefore, is appropriate if it will avoid conflicting opinions and promote judicial efficiency, while at the same time it does not unduly prejudice a party's interest. *Id.*

The Federal Circuit has identified two steps to be taken by trial courts when deciding whether to stay a case: (i) The trial court must identify a pressing need for the stay, and (ii) the court must then balance interests favoring a stay against interests frustrated by the action. *Cherokee Nation*, 124 F.3d at 1416. A court must also consider the interests of the federal court system, which interests include comity—the minimizing of conflicts between federal courts—and judicial economy. *Northrop Corp. v. United States*, 27 Fed.Cl. 795, 801–802 (1993) (granting a stay because stay promoted judicial economy and comity, which requires that a

stay may depend on the threat of inconsistent decisions); *Haustechnik v. United States*, 34 Fed.Cl. 740, 745 (1996) (staying proceedings for reasons of judicial economy and to avoid the possibility of inconsistent decisions). The issue of judicial economy has special significance in this court because of the statutory limits on the jurisdiction of claims against the government. The Federal Circuit, has, in the past, expressed its concern about "duplicative litigation due to jurisdictional conflicts." *Far West Federal Bank, S.B. v. Office of Thrift Supervision*, 930 F.2d 883, 891 (Fed.Cir.1991) (cited in *Northrop Corp.*, 27 Fed.Cl. at 803). This situation often arises when, as here, plaintiffs must bring their action for equitable relief in a United States district court, while their monetary damage claims must be brought in this court. Thus, courts should follow a policy of having " 'one single expeditious resolution of a dispute.' " *Id.* (citing *Morrow v. District of Columbia*, 417 F.2d 728, 728 & n. 38 (D.C.Cir.1969)). Lastly, a court has an ever-present interest in exercising jurisdiction in cases properly before it, the Federal Circuit stating that a trial court must always be mindful of its "paramount obligation to exercise jurisdiction timely in cases properly before it." *Cherokee Nation*, 124 F.3d at 1416, 1418.

## B. PROPRIETY OF A STAY DUE TO ACTION PENDING IN U.S. DISTRICT COURT

### 1. The Need for a Stay

Our first task is to identify a need for staying proceedings. New York Power argues that a stay will avoid the possibility that the "broader decision in the district court might conflict with the more narrow issues before this Court." Mot. Stay at 6. The district court action is broader for three reasons, according to New York Power. It asserts that the first three counts of the district court action have not been decided by the Federal Circuit in *Yankee Atomic*. Moreover, the district court action includes a

request for declaratory judgment and an injunction, relief that is beyond the power of this court to grant.[2]

To this, the government responds that the claim in the district court is no broader than the claim in the Court of Federal Claims because the counts in both cases are based on the notion that New York Power has a "vested property right" in the contract. The issue of whether New York Power suffered recoverable damages from loss of its "vested property right" was decided by the Federal Circuit in *Yankee Atomic*, the government contends, when it held that the assessment was not a retroactive price increase on the contract but was rather an exercise of Congress's taxing authority. *Id.* The Federal Circuit further held that the utility's contract, substantially identical to the contract in this case, did not preclude the possibility of later assessments imposed by the government. *Id.* at 3. Thus, in the government's view, New York Power seeks to relitigate the same issues as was decided in *Yankee Atomic* in another forum, hoping to receive a better outcome. *Id.* at 5. A stay on these alleged facts, the government asserts, would run contrary to the "orderly and efficient administration of justice," and upset the "uniformity of judicial determinations" because in essence it would be an attempt to make an end-run around the Federal Circuit's decision. *Id.* at 6.

We are persuaded that a need exists for a stay of proceedings, although not for all of the reasons New York Power has identified. The basis for our conclusion rests not, as New York Power argues, with the unique equitable relief afforded in the district court that cannot be obtained in this court, but with the unique theory of recovery sought in district court that is not within the jurisdiction of this court, namely the due process challenges to the special assessment. We will explain our reasoning further.

The jurisdiction of this court has been statutorily limited, primarily under the Tucker Act. Act of June 25, 1910, ch. 409, 36

---

**2.** Evidently, New York Power came to this conclusion after it filed its complaint in this court. Their complaint here requests declaratory judgment and injunctive relief from this court so that

it will not be required to "bring separate cases to obtain reimbursement of future special assessments, leading to an inefficient and expensive use of the judicial system." Compl. ¶ 78 at 18.

Stat. 837 (1910), codified at 28 U.S.C. § 1491 (1988). Under this statute, said jurisdiction is limited to suits for money damages against the United States that do not sound in tort and are founded on the Constitution, an act of Congress, an Executive Order, a regulation of an executive department, or any express or implied-in-fact contract with the United States. 28 U.S.C. § 1491(a)(1). In order to establish that a suit is a claim for money, a plaintiff must demonstrate 1) that where money has been paid to the government, that the "value sued for was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation;" or 2) where the claimant has not paid money to the government, that the particular provision of law relied on grants the claimant, expressly or by implication, "a right to be paid a certain sum." *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 372 F.2d 1002, 1007 (1967); *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). When a constitutional claim is asserted, the claim falls into the second category identified above, and thus the court does not have jurisdiction unless the constitutional provision at issue requires the payment of money damages. *Murray v. United States*, 817 F.2d 1580, 1582–83 (Fed.Cir.1987). Consequently, this court cannot hear claims based on violations of the due process or equal protection clauses of the Fifth or 14th Amendments because no language in those clauses requires the payment of damages for violations of the amendments. *Montalvo v. United States*, 231 Ct.Cl. 980, 982–3 (1982) (due process clause); *Bounds v. United States*, 1 Cl.Ct. 215, 216, *aff'd without op.*, 723 F.2d 68 (Fed.Cir.1983) (equal protection clause). If a claim is for a taking without "just compensation," however, this court may entertain the claim because the takings clause of the Fifth Amendment, by its words, confers on property owners the right to recover money damages from the government. *Murray*, 817 F.2d at 1583. The consequence is, given the foregoing, that this Court may hear takings claims but *not* due process claims.

In the actions filed in the district court, the plaintiffs allege due process violations caused by the special assessment if (count ii) they are characterized as a general liability on the utilities imposed by the government or (count iii) as a tax on the utilities. This theory of recovery cannot be heard in this court because it alleges a constitutional violation that is not within this court's jurisdiction. "The remedy for a violation of the Due Process Clause of the Fifth Amendment ... is not the payment of money damages, so neither the Court of Federal Claims, nor the district court has Tucker Act jurisdiction to decide cases based on those provisions. Those provisions are enforced through equitable remedies in the district courts pursuant to their federal question jurisdiction." *Crocker v. United States*, 37 Fed.Cl. 191, 195 (1997). The inclusion of due process counts in the district court claim means that the claim in that court is not only broader, but the very elements that make the claim broader cannot be entertained in this court.

Additionally, many of the other claims in the district court action overlap with the claims brought in this court. In this court, New York Power alleges four counts: (i) breach of contract, (ii) uncompensated taking, (iii) illegal exaction, and (iv) request for declaratory judgment and injunctive relief to afford complete relief to the parties. The first count, for breach of contract, is substantially addressed in the district court's count (iv) for impairment of fixed-price contract, in which the plaintiffs allege that, under the assessments, the utilities are required to pay additional sums for services, violating their fixed-price contract. The second count is reproduced in the district court's count (i) seeking declaratory judgment of an unconstitutional taking. The third count in this court claims that the assessments attributable to purchases of enriched uranium from third parties is an illegal exaction because it violates due process—by being so retroactive that they are harsh and oppressive—and equal protection by requiring utilities to pay assessments for indirect purchases, when the government has no right to impose assessments for direct purchases of enriched uranium. This third count can be swiftly disposed of when a determination is made as to the validity of direct purchases on due process

and other grounds. Thus, consideration of all the counts in the district court action would help this court better dispose of this count, as it would determine more fully whether the exactions are illegal by also considering whether the assessments are violative of due process. In short, the district court action would aid this court in assessing the merits of count (iii) filed in this court.

■ In count (iv) in this court, New York Power seeks declaratory and injunctive relief. Traditionally, however, equitable relief is not available in this court: "The Claims Court does not have the general equitable powers of a district court, to grant prospective relief." *Bowen v. Massachusetts,* 487 U.S. 879, 905, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988); *Katz v. Cisneros,* 16 F.3d 1204, 1208–1209 (Fed.Cir.1994) (Court of Federal Claims cannot grant prospective relief by adjudicating the lawfulness of a federal agency's regulatory interpretation). Limited equitable relief is available under the Tucker Act if it is an "incident of and collateral to" a money judgment. *James v. Caldera,* 159 F.3d 573, 580–81 (Fed.Cir.1998) (citing to 28 U.S.C. § 1491(a)(2)). Stated differently, the court can only grant equitable relief if it is "tied and subordinate to" a claim for money damages. *Id.* In this case, it appears from the evidence before us that the equitable relief sought in this court to enjoin further collection of the special assessments is not subordinate to the request for monetary relief. New York Power seeks roughly $17 million in monetary relief, as compensation for five assessments already paid. The utility estimates that if it pays assessments for the entire 15–year period, it will pay $52.5 million in 1996 dollars. While the monetary relief requested is not negligible, the equitable relief would save New York Power roughly $35 million, almost twice what it is asking as monetary relief. From these rough numbers, it is unlikely that New York Power's request for equitable relief is "subordinate to" its request for money damages, and thus unlikely that this court may grant equitable relief in this case. Given these questions regarding this court's power to grant equitable relief, the district court is in a better position, and may in fact have the sole power, to grant equitable relief to New York Power. Thus, as to the fourth and last count in this court, the district court action at best overlaps the relief sought in this court, and it is likely that only the district court can grant the equitable relief sought by New York Power.

■ Where two claims based on the same operative facts are filed in two courts, the court with the narrower claim should stay its case in favor of the court with the broader claim. *Georgia–Pacific Corp. v. United States,* 215 Ct.Cl. 354, 568 F.2d 1316, 1321 (Ct.Cl.1978). As stated by our predecessor court, "it is ordinarily better to centralize the proceedings in the tribunal which has the widest scope to handle all the parts of what is in commonsense one unified piece of litigation." *Id.* The district court action is the tribunal with the widest scope because it can hear the due process claim, as well as the takings and breach of contract theories that are before this court. It is the only court that can hear all the theories of recovery in one action and thus is the most appropriate court to continue with proceedings at this point in time.

■ Two factors add to the comfort level of our decision to stay this case. First, our decision is made easier by the fact that the action in this court has not progressed to a stage beyond that reached by the district court. The rule of thumb is that where there is duplicative litigation in federal courts, i.e., where two courts have before them the same parties and issues, litigation should continue in the court in which the suit first began. *Northrop Corp.,* 27 Fed.Cl. at 801; *Washington Metropolitan Area Transit Authority v. Ragonese,* 617 F.2d 828, 830 (D.C.Cir.1980). But this court has also held that the deciding factor is not which case was filed first, but which case has made the greatest progress. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 21–22, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Adrienne Village v. United States,* 25 Cl.Ct. 457, 460 (1992) (finding that an action filed first is "less important than the amount of progress that has been made in the respective courts"). The complaint was filed in this court on March 28, 1997. Before an answer was re-

ceived from the government, the case was stayed on May 29, 1997. The government's answer was filed during the pendency of the stay on August 13, 1998. Shortly after receipt of the answer, the stay was lifted on August 28, 1998. New York Power filed the present motion to stay proceedings on September 28, 1998. Thus, the substantive proceedings in this case to date consist of a complaint, an answer, and the motion to stay. While the lack of progress in this court is not *ipso facto* determinative to our decision, it makes us more comfortable in that we are not staying an action on which time and effort has been expended by the parties and this court.

Second, we find the course pursued by New York Power of filing in this court and then seeking a stay pending the district court action to be reasonable given the jurisdictional limitations on claims against the government and a claimant's desire not to lose a claim due to the running of the statute of limitations. Logically, if New York Power wants complete relief from what it believes to be an unlawful assessment, it should file its claim in the district court first, seeking a declaration of its rights, and then bring its judgment (if it should win) to this court to recover monetary damages. The Federal Circuit has asserted that, in a takings case, where the "validity of the regulatory imposition is to be challenged, it makes sense to pursue the validity question first so as to determine the necessity for prosecuting the takings claim." *Loveladies Harbor v. United States,* 27 F.3d 1545, 1555 (Fed.Cir.1994). But the same court also found that given the length of time taken by litigation, some plaintiffs who waited to file in the Court of Federal Claims until *after* final judgment of the district court action would find their claims barred by this court's statute of limitations. *Id.* The court concluded that it was not sound policy for courts to foreclose remedies to plaintiffs because of their choice among proper courts. *Id.* Similarly, this case potentially involves the validity of the Energy Policy Act's D & D Fund assessments. Thus, New York Power has an interest in preserving the case before this court, so as not to forego its opportunity of recovering money damages, and yet pursue its constitutional challenges

in the district court, which can properly hear them.

Arguing against a stay, the government contends that New York Power's purpose in the district court action is to relitigate the issues decided unfavorably to them in *Yankee Atomic.* A stay of proceedings would reward this form of forum shopping because the district court action would be decided first and be given preclusive effect in the Court of Federal Claims. We disagree with the conclusion that a stay is justified for the sole reason that one party is using the procedural rules to obtain a more favorable forum. We note first that New York Power cannot relitigate *Yankee Atomic* because New York Power was not a party to that case. At most, *Yankee Atomic* will have precedential effect on some issues in this case. In fact, federal precedent entitles New York Power to its own bite at the litigation apple—the government cannot, of course, invoke collateral estoppel defensively against New York Power because the utility was not a party in *Yankee Atomic. Beacon Oil Co. v. O'Leary,* 71 F.3d 391, 395 (Fed.Cir.1995) (collateral estoppel not used against a non-party). Thus New York Power can choose the forum and the issues that would give it the highest chance of success, as long as the forum has jurisdiction over the claim.

Second, the district court action is not a relitigation of *Yankee Atomic* because it seeks relief based on a greater number of theories than was sought in *Yankee Atomic.* The district court action includes due process claims that were not at issue in *Yankee Atomic* and that could not be heard by the Court of Federal Claims. Thus, even though some issues are identical to those argued before the Federal Circuit in *Yankee Atomic,* the due process claims were not heard by the Federal Circuit, meaning that the district court action would not relitigate issues considered in *Yankee Atomic.*

The government may be correct in its assertion that New York Power is trying to get the district court to rehear the identical issues heard in this forum regarding contract rights, and that it plans to use a possible favorable opinion in the district court to col-

laterally estop this court. But even if all these assertions are true, it is not for this court to monitor the propriety of a party's litigation tactics as long as it is allowed under federal law. New York Power has raised a legitimate issue that cannot be heard in this court. Because consideration of this issue would aid this court in determining the merits of the case before it, a stay is appropriate at this time.

Finally, the government also contends that the Federal Circuit has already decided counts (ii) and (iii) in *Yankee Atomic*, when it held that the assessments were "a general tax that falls proportionally on all utilities that benefitted from the DOE's uranium enrichment services." *Yankee Atomic*, 112 F.3d at 1576. But the above-quoted statement was made not in the context of a due process determination, but while assessing whether the special assessments constituted a "sovereign act" of Congress. *Id.* at 1575. The Federal Circuit was ascertaining whether Congress had acted for the "purpose of solving the problem of decontamination and decommissioning of uranium enrichment facilities (i.e., the legislation was passed for the benefit of the public)." *Id.* The court's determination that the assessments were proportional was simply limited to the observation that they targeted utilities that used and benefitted from the government's enrichment services, thereby spreading the costs of a societal problem. *Id.* at 1576 & n. 6. This observation helped the court ascertain whether Congress was acting under its sovereign powers rather than retroactively increasing the price of its contracts. The Federal Circuit did not consider whether, as a tax, the assessments were levied on too-narrow of a base while the benefits of the tax inured to all citizens, nor did the court consider whether the assessments, as a tax, were excessively retroactive—all additional issues to be determined under a due process analysis. These issues were not before the court and therefore it could not squarely address them. Thus, because the district court action raises unique issues that have not been addressed by our appellate court and cannot be addressed by this court, the district court action is broader than that filed in this court.

### 2. The Balancing of Interests

Our second task when determining whether a stay is appropriate is to balance the interests involved to determine whether they favor a stay. Obviously, the interest of New York Power is forwarded, otherwise it would not be requesting a stay. Their interest, as discussed earlier, is in having the district court determine the efficacy of the due process claims before this court decides the propriety of the claim for money damages.

■ Additionally, we have identified two interests of the court that militate in favor of a stay in this case. First, the interest of the judiciary would be furthered by a stay because it would conserve judicial resources and promote judicial economy. Presently, we have substantially duplicative claims both in the district court and in this court. A stay may be warranted when there is duplicative litigation due to jurisdictional conflicts. *Northrop Corp. v. United States*, 27 Fed.Cl. at 803. The Federal Circuit has stated that "[t]o assign to different courts the determination of various aspects of the same complex transaction, to redevelop the identical facts in order to permit two separate trial courts and two independent appellate avenues to consider alternative theories of relief, should not be imposed unless clearly required by statute." *Far West Fed. Bank*, 930 F.2d at 891. In this case, two separate trial courts need not duplicate its work when one court can stay proceedings while the other one continues. Where one court has before it a greater number of issues, it makes economical sense for that court to proceed with the action before it, allowing the other court to hear cases that would have been otherwise displaced. Thus the interest of judicial economy warrants a stay in this case.

■ A second interest of the court that is favored by a stay is that it removes the possibility of inconsistent decisions. This reasoning has been used previously by this court which granted a stay of proceedings to await the district court's opinion regarding the lawfulness of a worker's discharge. *Armstrong v. United States*, 4 Cl.Ct. 269, 270 (1984). The reason for the stay was to avoid

the inconsistent judgments that would result if both courts had proceeded simultaneously and this court had granted monetary damages for back pay, etc., while the district court had later found the discharge of the plaintiff to be lawful. *Id.* at 271 & n. 1. The identical situation arises here where an inconsistent decision could result in the absence of a stay if this court denies monetary recovery to New York Power, but the district court finds, for instance, that the assessments at issue are an unconstitutional tax, violating the due process clause of the Fifth Amendment.

Finally, a stay would not *harm* the interests of the government. According to New York Power, the government has the money at issue in its possession and a stay in this court will not restrict the government's ability to continue collecting the assessments. *Id.* We agree. The worst-case scenario for the government is if New York Power wins in the district court and returns to this court to recover money damages, where it might not have recovered money damages had the action not been stayed. The harm to the government under this sequence of events is the adverse judgment in this court, but an adverse judgment cannot be considered a harm because it is an incident of litigation—every case results in an adverse judgment for one party.

Balanced against these interests are those interests that militate *against* a stay of these proceedings. The paramount interest harmed by a stay is this court's obligation, and desire, to decide the case before it. Every court has a "paramount obligation to exercise jurisdiction timely in cases properly before it." *Cherokee Nation*, 124 F.3d at 1416. This interest will assuredly be harmed by a stay in this court, because should the district court action proceed, collateral estoppel could bar this court's consideration of many issues. Nonetheless, this interest does not override the interests of this court in both avoiding duplicative decisionmaking and precluding the possibility of inconsistent decisions. A court has less interest in exercising jurisdiction when a similar case between the same parties being pursued in a more appropriate forum will advance the law.

Thus we find this interest to be of lesser import in the circumstances of this case.

Additionally, the government argues, (1) that a stay would prolong the litigation over the Energy Policy Act, and (2) that the *Eastern Enterprises* decision, which the government alleges New York Power is relying on for a more favorable outcome in the district court, is based on different factual premises than the *Yankee Atomic* decision. *Id.* at 7–10. These two arguments may be quickly dismissed. The interest of ending litigation over the Energy Policy Act is simply not a credible interest. Our system of government requires that acts of Congress and the acts of the executive be tested against constitutional dictates, as well as notions of good faith and fair play. A party may challenge the acts of the government within prescribed limits, but none of these limits would counsel that litigation be resolved as quickly as possible at the expense of legitimate issues still to be resolved. In any event, the government is not harmed by the continuing litigation other than having to defend the Energy Policy Act. The government has collected the past assessments and will continue to collect future assessments, unless a court finds them to be unconstitutional. The second argument, that *Eastern Enterprises* is not applicable to the present facts, is not for this court to determine. New York Power has asserted a due process challenge to the assessments in the district court, a claim that cannot be heard in this court. The applicability of case law to that claim is not for this court to determine.

For all of the foregoing reasons, we find that a need for a stay exists to let the district court determine the due process challenge to the special assessments. Such a stay would allow New York Power to pursue its due process claim in district court, which cannot be heard in this court, before we decide whether New York power is entitled to monetary damages. The only real harm that would result from this stay is that this court is deprived of the opportunity of timely exercising its jurisdiction over the case. Balancing the interests, we hold that the interests in favor of a stay outweigh those against a stay.

### C. PROPRIETY OF A STAY DUE TO A CASE PROCEEDING BEFORE ANOTHER JUDGE OF THIS COURT

New York Power also requests that this court stay proceedings because a similar case is proceeding before another judge of this court. This basis for granting a stay need not be considered if we determine that a stay is otherwise appropriate because of the district court action. Several factors, however, counsel against granting a stay were we to consider the issue. When there is a case before another judge of this court, this court does not await a decision on an issue beyond our court's jurisdiction. And at the present time, there is no point of law awaiting final decision by an appellate court. The only factor to be applied at this juncture is the exercise of each judge's sound discretion. And each judge of this court is equally competent to resolve the issues presented. Thus there is no sound reason to stay this proceeding in favor of a similar case before another judge of this court when no issues in that case would be helpful to this court.

Finally, a request for consolidation is the more appropriate motion in this circumstance. New York Power has never filed a notice of related cases, nor has it sought consolidation of this case with the claimed "similar" case. These are the more traditional routes to follow when there are many similar issues in both cases. As stated earlier, each court has an unfailing obligation to timely exercise jurisdiction in cases properly before it. This circumstance would counsel that each judge on this court resolve the case as he or she sees fit; any inconsistences in decisions will appropriately be resolved by the Federal Circuit.

### CONCLUSION

Therefore, plaintiff's motion, filed on September 28, 1998, for a stay of proceedings pending a final decision in its case filed in the district court is hereby GRANTED. The stay shall extend for 45 days after a final judgment is entered in the case of *Consolidated Edison Co. of New York v. United States*, 30 F.Supp.2d 385 (S.D.N.Y. filed August 14, 1998).

IT IS SO ORDERED.