CONSOLIDATED EDISON COMPANY OF NEW YORK, et al., Plaintiffs,

v.

UNITED STATES of America, et al., Defendants.

No. 98 Civ. 4155(WK).

United States District Court, S.D. New York.

April 12, 1999.

Daniel R. Murdock, Lori J. Van Auken, Winston & Strawn, New York City, for plaintiffs.

Sheila M. Gowan, United States Attorney's Office, New York City, for defendants.

## OPINION & ORDER

WHITMAN KNAPP, Senior District Judge.

Plaintiffs seek declaratory and injunctive relief in challenging the constitutionality of certain provisions of the Energy Policy Act of 1992 ("EPACT"), 42 U.S.C. § 2297g, *et seq.* Defendants have moved, pursuant to 28 U.S.C. § 1631, for an order transferring this action to the United States Court of Federal Claims ("CFC") for consolidation with plaintiffs' claims in that court, or, in the alternative, dismissing this action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. As noted by defendants, upon the filing of a motion to transfer a case to the CFC, proceedings in the district court are statutorily stayed until sixty days after a decision on the motion. *See* 28 U.S.C. § 1292(d)(4)(B).

## PROCEDURAL BACKGROUND

The factual background of this case is set forth in our Opinion and Order dated November 25, 1998, familiarity with which will be presumed. This action was commenced on June 12, 1998 and an amended complaint was filed on August 14. On August 17, the defendants moved, pursuant to Fed.R.Civ.P. 7(b)(1), for a stay pending the resolution of related actions commenced by each of the plaintiffs in the CFC. In an Opinion and Order of November 25, 1998, we denied that motion, but certified the question for interlocutory appeal. In denying the motion for a stay, we implicitly determined that we had subject matter jurisdiction, though we were not directly called upon to decide that issue.

Defendants did not avail themselves of the right to appeal, but on December 11 brought the instant motion to transfer or dismiss. Shortly thereafter, the plaintiffs

brought a motion by order to show cause asking us to strike the instant motion, or, in the alternative, to lift the statutory stay so that discovery could proceed. At a hearing on December 23, we denied the plaintiffs' motion and directed plaintiffs to respond to the defendants' motion on the merits.

Defendants contend that plaintiffs' claims are barred by the doctrine of sovereign immunity and that plaintiffs' sole remedy is in the CFC. Defendants maintain that none of the complaint's purported bases for district court jurisdiction, (1) federal question jurisdiction, 28 U.S.C. § 1331; (2) the mandamus statute, 28 U.S.C. § 1361; (3) the Declaratory Judgment Act, 28 U.S.C. § 2201–2202; and (4) the Administrative Procedure Act, 5 U.S.C. §§ 701 and 702, operate to waive the government's sovereign immunity. Plaintiffs respond by asserting that: (1) no waiver of sovereign immunity is required because district courts have subject matter jurisdiction to hear constitutional challenges to statutes; and (2) even if a waiver of sovereign immunity were required, § 702 of the Administrative Procedure Act provides for such a waiver in these circumstances. Thus, we now confront the jurisdictional question head-on.

## DISCUSSION

In the motion at bar defendants have taken the position, as they did on their prior motion to stay, that 28 U.S.C. § 1491 ("the Tucker Act") mandates that plaintiffs' claims are properly considered only in the CFC and not in the district court. We must therefore examine whether plaintiffs' claims, which seek declaratory and injunctive relief, may be adjudicated in this forum.

### A. Subject matter jurisdiction and sovereign immunity

█ The Second Circuit's decision in *In re Chateaugay Corp.* (2d Cir.1995) 53 F.3d 478 convinces us that we retain subject matter jurisdiction over this action without regard to whether the government has waived sovereign immunity.

*Chateaugay* dealt with the question of who should pay the spiraling costs wrought by a series of benefits agreements over many years between coal mine owners and their employees. The burden of funding the pensions and benefits of an "ever-greater" number of retirees was falling upon an "ever-smaller" number of mining companies. *Chateaugay*, 53 F.3d at 484. Congress responded to the crisis by enacting the Coal Act, Pub.L. No. 102–486, 106 Stat. 2776, 3036–56 (codified at 26 U.S.C. §§ 9701–9722). The Coal Act spread the costs of funding the pensions between the mining companies then in existence and the companies which had already left the industry (by imposing the latter group's obligations on "related persons," typically successors in interest). To enforce compliance, the Coal Act authorized the Secretary of the Treasury to impose taxes on companies who failed to meet their obligations under the Act.

LTV Steel Company, the plaintiff in *Chateaugay* and a former coal mining outfit which had already filed for bankruptcy protection at the time of the Act's passage, challenged the constitutionality of the Coal Act on two grounds: (1) it claimed that the Act violated the Due Process Clause; and (2) that the Act constituted a taking of private property for public use without just compensation. The *Chateaugay* court affirmed the district court's dismissal of the due process claims after finding that the Coal Act, as an economic regulation, need only meet the rational basis level of scrutiny. 53 F.3d at 486–491.

Of greater interest for our purposes is the court's analysis of the takings claims. Citing the declaratory nature of the relief sought by LTV Steel, the court began its examination of the takings claims by expressly rejecting the government's theory that the district court was without jurisdiction to hear them. *Id.* at 491–92 ("We find no merit to the government's suggestion

that the Tucker Act, 28 U.S.C. § 1491(a), acts to remove from the federal district courts jurisdiction over an action for declaratory relief where no money damages have been requested.").

The court then proceeded to address the thornier issue of whether a takings claim could ever be brought in a district court without first seeking compensation in the CFC. *Id.* at 492. After surveying a wide variety of Supreme Court decisions, the *Chateaugay* court noted a distinction between the Supreme Court's endorsement of district court jurisdiction over (1) statutes burdening real and tangible property; and (2) those requiring direct transfers of money to the government. *Id.* at 493. Finding significance in that distinction, the *Chateaugay* court concluded as follows:

> We hold that where the challenged statute requires a person or entity to pay money to the government, it must be presumed that Congress had no intention of providing compensation for the deprivation through the Tucker Act. Common sense dictates such a presumption. For example, in the case of the Black Lung Act, which required mining companies to contribute funds for the benefit of afflicted former miners, it would make no sense to presume that Congress intended for the Treasury to compensate mining companies for their contributions because the Act lacks an express Congressional statement to the contrary. Such a presumption would tend to nullify all existing legislation adjusting the benefits and burdens of economic life: Every dollar paid pursuant to a statute would be presumed to generate a dollar of Tucker Act compensation.

53 F.3d at 493.

While defendants attempt to distinguish *Chateaugay* on the grounds that the Coal Act required the mine owners to pay compensation to a privately operated fund, as opposed to the government itself, it is clear from the decision that the court based its reasoning on the assumption that the mine owners were being forced to pay money directly to the government. *See* 53 F.3d at 493 n. 6. In addition, we agree with the position advanced by plaintiffs at oral argument that as far as their due process claims are concerned, whether the payments are remitted to a private fund or to the government is of no import because the harm is suffered as a result of the deprivation of their property and without regard to who ultimately receives the property.

As a result, the *Chateaugay* holding, which was expressly adopted by the Supreme Court in *Eastern Enterprises v. Apfel* (1998) 524 U.S. 498, 118 S.Ct. 2131, at 2145, 141 L.Ed.2d 451, is directly on point. In the statute at bar, 42 U.S.C. § 2297g–1(g), Congress provided that "[a]ny special assessment levied under this section on domestic utilities ... shall be deemed a necessary and reasonable current cost of fuel and shall be fully recoverable in rates in all jurisdictions in the same manner as the utility's other fuel cost." As did the *Chateaugay* court on the facts before it, we believe, after consideration of those before us, that it would defy logic for the EPACT Congress to have intended for the Treasury to compensate nuclear power companies dollar-for-dollar for their assessment costs. This fact is further evidenced by the statute itself, which authorized the power companies to recover their additional costs via utility rate increases— i.e., Congress plainly intended for the plaintiffs to be compensated by the energy-consuming public as opposed to government coffers.

■ As a result, we conclude that the decisions in *Chateaugay* and *Eastern Enterprises* establish that constitutional challenges to federal statutes which mandate payment of money directly to the government may be heard in federal district court.

## B. *Waiver of sovereign immunity*

■ Assuming, *arguendo*, that the foregoing discussion is faulty, we conclude that

any sovereign immunity the government may have enjoyed is waived by Section 702 of the Administrative Procedures Act ("APA"), 5 U.S.C. § 702. That section waives sovereign immunity for claims against the government seeking "other than money damages":

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States ... Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

■ In support of their contention that such section does not waive sovereign immunity in this forum, defendants raise three arguments: (1) immunity is not waived because the Tucker Act "impliedly forbids" the relief sought by plaintiffs; (2) immunity is not waived because the nature of the relief sought is not "other than money damages"; and (3) immunity is not waived because § 702, read in conjunction with § 704, operates to preclude review since plaintiffs have an adequate remedy

in the CFC. We will take each argument in turn.

(1) A survey of relevant case law makes it apparent that as a general rule the Tucker Act has been held to "impliedly forbid" claims that seek (in essence) money damages, but not those that seek (in essence) equitable relief. *Compare Polanco v. United States Drug Enforcement Administration* (2d Cir.1998) 158 F.3d 647, 652 (APA waives sovereign immunity for relief that is equitable in nature, notwithstanding the fact that the property at issue is currency); and *United States v. Vazquez* (2d Cir.1998) 145 F.3d 74, 79 (United States has expressly consented to suit in cases seeking declaratory and injunctive relief); *with Brazos Electric Power Cooperative, Inc.* (Fed. Cir.1998) 144 F.3d 784, 788 (sovereign immunity not deemed waived where "a single, uncomplicated payment of money [by the government] would provide Brazos with an entirely adequate remedy. No prospective relief would be required ...."); and *Kanemoto v. Reno* (Fed.Cir.1994) 41 F.3d 641 (because "naked money judgment" would provide Kanemoto with an adequate remedy, APA does not waive sovereign immunity in district court).

Moreover, where significant prospective relief is implicated, as it is on the facts at bar[1], the preferred forum is in federal district court. *See National Center for Manufacturing Sciences v. United States* (Fed.Cir.1997) 114 F.3d 196, 201 (where declaratory or injunctive relief which might "require the government to modify future practices" is sought, CFC is not empowered to grant full relief and district court jurisdiction must be upheld). Finally, the mere incantation

---

1. We observed in our Opinion and Order of November 1998 that of a total of $2.25 billion in assessments to be paid over the entire

fifteen year period, only six assessments totaling $560 million had been paid by plaintiffs.

by defendants of the fact that plaintiffs seek to enforce contractual rights does not, in our view, wrest us of jurisdiction. *See Transohio Savings Bank, et al. v. Director, Office of Thrift Supervision, et al.* (D.C.Cir. 1992) 967 F.2d 598, 609 ("The answer to the sovereign immunity and jurisdiction questions depends not simply on whether a case involves contract issues, but whether, despite the presence of a contract, plaintiffs' claims are founded only on a contract, or whether they stem from a statute or the Constitution."). The *Transohio* court proceeded to hold that under § 702 and the Tucker Act, litigants may bring common-law contract claims only as actions for money damages in the CFC, but statutory and constitutional claims (even those depending on the existence and terms of a contract with the government) may be brought in federal district court. 967 F.2d at 610. Inasmuch as the plaintiffs at bar seek significant prospective relief, which is exclusively declaratory and injunctive in nature, and depends largely on the Constitution while only peripherally on contracts with the United States, we hold that the Tucker Act does not "impliedly forbid" the relief sought.

(2) It is beyond dispute that the complaint before us, by its terms, seeks only declaratory and injunctive relief. Of the seven counts, the operative claim seeks injunctive relief to preclude the government from enforcing the special assessment statutes while the other six seek declaratory judgments relating to unconstitutional takings, due process violations, and breaches of contract.

Defendants contend that though it was carefully crafted to avoid seeking money damages by name, the complaint as a practical matter seeks compensatory (i.e., money) damages for losses suffered from an alleged breach of contract. As a result, they argue, it does not seek "other than money damages" within that phrase's meaning in the APA, and thus sovereign immunity has not been waived.

This argument can be resolved in much the same manner as the first. The issue before us is whether the relief plaintiffs' seek is akin to an action for damages, "which are intended to provide a victim with monetary compensation for an injury to his person, property, or reputation," or is related to an equitable action for specific relief, "which may include … the recovery of specific property or monies, ejectment from land, or injunction either directing or restraining the defendant officer's actions." *Bowen v. Massachusetts* (1988) 487 U.S. 879, 892, 108 S.Ct. 2722, 101 L.Ed.2d 749 (quoting *Larson v. Domestic & Foreign Commerce Corp.* (1949) 337 U.S. 682, 688, 69 S.Ct. 1457, 93 L.Ed. 1628). We conclude that the complaint at bar seeks the latter and not the former.

The Supreme Court noted in *Bowen* that the CFC does not have the general equitable powers of a district court to grant prospective relief. 487 U.S. at 905, 108 S.Ct. 2722. "We are not willing to assume, categorically, that a naked money judgment against the United States will always be an adequate substitute for prospective relief fashioned in the light of the rather complex ongoing relationship between the parties." *Id.* Because the relief sought here is disproportionately prospective and therefore equitable (as opposed to compensatory), we believe that the government, through the APA, has waived whatever sovereign immunity it may have had, and that district court jurisdiction is proper.

(3) Section 704 of the APA provides, in relevant part, that "[a]gency action

made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. We can cite no more persuasive support for our conclusion that the CFC does not provide plaintiffs with an "adequate remedy" than the actions of that court itself. In *New York Power Authority v. United States* (Fed.Cl. Jan.29, 1999) 42 Fed.Cl. 795, 1999 WL 38966 (No. 97–236C), Judge Gibson of the CFC stayed that related action in deference to the case at bar, citing the CFC's incapacity to render judgment over plaintiffs' due process claims as well as its inability to grant equitable relief.

## CONCLUSION

For the foregoing reasons, defendants' motion to transfer this action to the court of claims, or in the alternative to dismiss for lack of subject matter jurisdiction is denied. However, inasmuch as we believe, in accordance with 28 U.S.C. § 1292(b) that this decision "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation," we again certify this question for interlocutory appeal.

**SO ORDERED.**